CASE 91—PETITION EQUITY—NOVEMBER 23.

## Parks, &c., vs. Fry.

APPEAL FROM LOUISVILLE CHANCERY COURT.

Where legal title to land is held by a trustee, he shall be a party to the proceedings for its sale, and in all other respects the proceedings for the sale of land held in trust for infants shall be the same as where they hold the legal title, except that the *trustee shall give bond* and security, instead of the guardian, where the proceeds of the sale are to go into the hands of such trustee. (*Sec.* 545, *Civil Code.*)

FOOTE & WINCHESTER,       For Appellants,

CITED—

*Civil Code, sec.* 543.

*Revised Statutes, art.* 3, *chap.* 86.

HARRISON & BENNETT,       For Appellee,

CITED—

*Civil Code, sec.* 543, *and* 86*th chapter Rev. Stat.*

CHIEF JUSTICE PETERS DELIVERED THE OPINION OF THE COURT:

Floyd Parks died testate in the county of Jefferson, in 1865, leaving a widow, a son, the appellant, two

VOL. II—28

daughters, Mrs. Howes and Mrs. Lentz, and a grand-
son, the appellee, the only child of his deceased daugh-
ter, Mrs. Sarah Fry, him surviving, and to whom he
devised his estate.

After making suitable provision for his widow, the
testator declares, in the second clause of his will, his
intention to be, to give to his three children, Eliza Jane,
Mary, and Joshua, and his grandson, Floyd Fry, an
equal, fair, and just portion of his estate, subject to
the devise to his wife, share and share alike. That he
had theretofore made advancements to each of his chil-
dren, and to his deceased daughter, Sarah Fry, and to
equalize them, it was proper that they should be charged
with the amounts advanced to them respectively, and
to charge his said grandson with the amount advanced
to his mother; and states that he had given to his son
a tract of land in Jefferson county, which he valued at
thirty thousand dollars, to his daughter, Mrs. Lentz,
thirty thousand dollars, and to equalize Mrs. Howes
with them, he gives to her twenty thousand dollars of
stock in the Shelbyville and Louisville turnpike road
company, and to his grandson he gave, "subject to the
limitations and contingencies hereinafter named as to
this, and any other provision of my will for him, or to
his benefit," capital stock in the Taylorsville and Louis-
ville turnpike road company, at fifty dollars per share,
to make the sum of eighteen thousand dollars, which,
with the advancement made to his mother, &c., is equal
to thirty thousand dollars.

In the third clause of his will he devises the residue
and remainder of his estate, after the payment of his
debts, and the land and road stock devised to his wife
for life, in equal portions, to his said three children and
grandson, and says: but the devise to the latter is subject

to and to be governed by the provisions of my will in paragraph *four*, which is as follows: "My said grandson shall be entitled, from the rents and profits of his portion of my estate, to the sum of five hundred dollars per year during his minority, to be paid in semi-annual payments to his guardian, for his support and education, or to be paid by my executor to and for these objects, that he may be liberally and properly educated. If my said grandson should live until he attains twenty-one years of age, then he shall be entitled to and receive that portion of my estate devised to him; and should he marry before his majority and die before he is twenty-one years old, leaving at his death issue of his body by said marriage, such issue surviving his or her father, shall take said estate; but should my said grandson die an infant, without leaving surviving him any lawful issue of his body, then said estate, and the issues and profits thereof, except said five hundred dollars per year, shall go and belong to my said three children; or the children of either of them dying before my grandson, the child or children as a class to be entitled to the portion of such deceased parent."

"The estate devised to my grandson shall be held and controlled by my executor until the happening of the contingency or event herein provided for, and my said executor shall manage said estate and make it productive and secure against loss."

In a codicil to his will, he devised to his said grandson fifty acres of land, part of his homestead tract, and says that the devise in the codicil to his grandson is subject to and made alone on the conditions and limitation named in the fourth paragraph of his will; and immediately following the last sentence he adds, in a separate paragraph, "It is my will that the devises in my will and

this codicil, to my grandson, Floyd Fry, in addition to the limitations, conditions, and terms named in said will, shall be, and are, upon the following limitations, contingencies, and terms : That should my grandson live to attain the age of twenty-one years or more, and then die without leaving issue of his body, that then said estate shall pass to and go to my children or their descendants, as provided in the event of his dying in his minority without children; but my grandson, after he shall attain twenty-one years of age, shall have and enjoy the rents and profits of said estate." Appellant was appointed and qualified as sole executor of said will.

In February, 1866, the three children of the testator, with the husbands of the two *femes covert*, united in a petition, making the grandson, Floyd Fry, a defendant, to the Louisville chancery court, for a judgment for the sale of a house and lot in the city of Louisville, which passed, under the third clause of the testator's will, to his devisees jointly, and which it seems were not susceptible of division. The judgment was rendered for the sale of the property, which was accordingly made, and Joshua B. Parks, the executor, purchased the property. After the confirmation of the sale, he moved to be permitted to retain in his hands, as executor of said will, or as trustee, the one fourth of the price for which said property was sold ; which motion, we may assume, was opposed by Abraham Fry as the guardian of the infant, Floyd P. Fry, although there is no evidence of his appointment as statutory guardian, to whom the money before named was ordered to be paid, upon his executing "bond under the 86*th chapter of Revised Statutes,*" and was overruled; and from that judgment J. B. Parks prosecutes this appeal. And the propriety of this order or judgment is the only question involved in this record.

It is perfectly clear, from both the will and codicil, that the testator never intended any portion of his estate devised to his said grandson should pass from the possession and control of his executor, the appellant, until the grandson attained twenty-one years of age. Five hundred dollars, it is true, were to be applied semi-annually to his maintenance and education; but that fund was to be raised from the rents and profits of the estate designated in the will for said grandson, upon the happening of the contingencies provided for; and it is expressly provided that the executor shall retain and control the estate till then, and make it productive and secure against loss.

The testator had the same power to designate by whom the devises to his grandson should be held and managed, and when they should be delivered over to him, as he had to make the devises; and it can make no difference whether real estate is sold and converted into personalty, or personalty into real estate, the custodian and manager of the whole for the prescribed period must be the person named by the testator, until, for some good and sufficient reason, he shall be removed by a court of competent jurisdiction. It does not appear, nor can it be said, that the intention of the testator, or even the letter of his will, was violated by the sale of the house and lot; and the sale thereof was certainly authorized by *section* 543, *Civil Code*. But the conclusion of the chancellor is not maintainable, when he says: when a sale is made under said *section*, "the statute requires that a bond shall be taken from the guardian to comply with the orders of the court as to the purchase money, and of course the money has to be paid over to the guardian, &c." That would have been correct if the interest of the infant in the property had not been held in trust. And *section* 545, *Civil Code*,

Parks, &c., vs. Fry.

provides: Where the legal title to land or slaves is held by a trustee, he shall be a party to the proceedings for their sale; and in all other respects the proceedings for the sale of land and slaves held in trust for *infants*, married women, and persons of unsound mind, shall be the same as where they hold the legal title, except that the trustees shall give bond and security, instead of the guardian, committee, or husband, where the proceeds of the sale are to go into the hands of such trustee.

The one fourth of the proceeds of the house and lot should, therefore, have been, by the chancellor, ordered to remain in the hands of appellants, upon his executing bond with good security, as by the section *supra* required.

Wherefore, the judgment is *reversed*, and the cause remanded, with directions to render judgment as herein indicated.